JUDE G. GRAVOIS, Judge.
|2The plaintiff, Emily Hunt, has appealed the trial court’s judgment dismissing her personal injury suit against defendant, Allstate Insurance Company (“Allstate”), her *218 uninsured/underinsured motorist insurer. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY

On March 12, 2006, plaintiff was injured when the car she was driving was rear-ended by a taxicab being driven by Reva Desoto. On March 7, 2007, plaintiff filed suit against Ms. Desoto and her liability insurer. On March 5, 2008, plaintiff filed a supplemental and amending petition, adding Allstate as a defendant in the suit as her uninsured/underinsured motorist insurer. Plaintiff subsequently settled her claims against Ms. Desoto and her insurer for $24,000, and on March 18, 2010, they were dismissed from the suit. On June 15, 2011, plaintiff proceeded to a judge trial against Allstate.
|sAt trial, plaintiff testified that she was twenty-two years old at the time of the accident. About one week after the accident, she felt stabbing pains in her back. She sought treatment from Dr. Michael Haydel, a chiropractor, for soreness in her whole body, but mostly for pain in her back. Dr. Haydel’s medical records indicate that plaintiff was treated by Dr. Hay-del from March 21, 2006 until May 17, 2006. Plaintiff testified that although she was given pain medications by Dr. Haydel, she did not take them because they made her dizzy.
In May 2006, plaintiff went out of the country to have breast augmentation surgery and liposuction. The appellate record does not contain any medical records regarding these procedures. However, plaintiff admitted that she had epidural injections for these procedures and incisions were made into her sacral (lower spine) area in order to drain fluid after the liposuction.
On June 22, 2006, plaintiff sought emergency room treatment at Lakeview Regional Medical Center. The medical records from this visit indicate that plaintiff complained of “weakness, mood swings, a rash to the inner thighs, as well as some low back pain that has been off and on for four months.” Plaintiff was administered intravenous fluids and instructed to take iron pills two to three times per day for anemia, which resulted from her liposuction. No treatment was rendered for the low back pain complaint. Medical records from a July 5, 2006 emergency room visit at Lakeview Regional Medical Center indicate that plaintiff received treatment there for an overdose of Vicodin and Valium. Apparently, plaintiff was involved in an argument with her boyfriend just prior to taking an overdose of these medications.
On July 24, 2006, plaintiff sought treatment from another chiropractor, Dr. Jim McCue. Plaintiff explained that she sought treatment from Dr. McCue rather than from Dr. Haydel because Dr. McCue’s office was closer to her home. She 1 testified that she was treated by Dr. McCue on and off for a few years. Dr. McCue’s medical records indicate that plaintiff was treated by him on a regular basis from July 24, 2006 until October 4, 2006. Plaintiff complained to Dr. McCue of neck and back pain and received treatment therefor. She was referred to Pamela Conley, M.D., for pain management; however, the appellate record does not contain any medical records related to this referral.
The medical records also indicate that during this time, plaintiff also sought treatment from Leonard Kancher, M.D., for various complaints. On the initial visit of August 4, 2006, plaintiffs social and psychiatric history is discussed in detail. There is one mention in these records of back pain resulting from a motor vehicle accident three months earlier. Presumably, this is a reference to the March 2006 accident, since there is no evidence in the record of plaintiff having been involved in *219 any other motor vehicle accident in 2006. The note states that plaintiff was being treated by a chiropractor for these complaints. The physical examination of plaintiff made at this visit does not indicate there was any decreased range of motion or neurological deficits related to her back pain, nor was any treatment given for back pain. Plaintiff returned to Dr. Kancher on August 31, 2006, apparently for treatment of depression and weight gain. The note of this visit indicates that plaintiff had gained weight since her last visit and her mother had recently purchased a membership to a health club for her.[1] Listed under “current problems” are “attempted suicide, depression, situational stress reaction.” There is no mention of back pain. Plaintiff returned to Dr. Kancher on September 28, 2006, apparently to have her weight checked. The record from this visit indicates that plaintiff continued to gain weight. There is no mention of back pain.
IrA note from one of plaintiffs psychiatric visits at Mercy Family Center dated September 12, 2006 was also admitted into evidence. This note states that plaintiff was involved in multiple accidents, but no dates are given as to these accidents. The note further states that plaintiff was involved in an abusive relationship with her boyfriend, expounding that the relationship was abusive “emotionally/physically/sexually.” At trial, plaintiff was questioned regarding this relationship and admitted that her boyfriend had abused her. She explained that there was one altercation in which her boyfriend tried to choke her and she “put him in jail.” She denied being injured in this altercation.
In April of 2007, plaintiff became pregnant. She delivered twins on December 11, 2007. During her pregnancy, plaintiff sought treatment from Dr. McCue for back pain. The medical records indicate that plaintiff was treated by Dr. McCue from July 19, 2007 until August 30, 2007.
In March 2008, plaintiff again sought treatment from Dr. McCue with complaints of back pain. The medical records indicate that she was treated for this pain from March 27, 2008 until April 10, 2008. Dr. McCue referred plaintiff for an MRI, which was performed on April 9, 2008. This MRI indicated that plaintiff had a disc herniation at the L5-S1 level without nerve root impingement. The appellate record does not contain any medical records reflecting treatment of plaintiff for the remainder of 2008.
The medical records introduced into evidence indicate that on July 21, 2009, plaintiff presented to the emergency room at Lakeview Regional Medical Center for complaints of back pain. She was given an injection of Toradol. Further, Loratab and Robaxin were given by mouth. She was discharged and instructed to take Motrin and apply ice to her back. She was also apparently given a ^prescription for Vicodin. The appellate record does not contain any medical records for any other medical treatment of plaintiff in 2009.
Plaintiff testified that she was involved in another motor vehicle accident on June 30, 2010. She stated that she was not injured in this accident.
The medical records also indicate that on October 4, 2010, plaintiff sought treatment from Dr. F. Allen Johnston, an orthopedic surgeon, for evaluation of her lower back. Dr. Johnson’s report from this visit states that plaintiff never had constant pain on a daily basis, but she did have “a few flare-ups a year although recently when having a flare-up her symptoms will last much longer.” This report mentions the March 12, 2006 accident, but *220 does not mention the June 30, 2010 accident. Dr. Johnson ordered an MRI. This MRI, which was performed on October 19, 2010, indicates that plaintiff had a large disc herniation at the L5-S1 level with compression of the nerve at SI. In the meantime, plaintiff was involved in another motor vehicle accident on October 8, 2010. She admitted that her back pain worsened after the October 2010 accident.
Dr. Johnson testified at trial and was accepted as an expert in orthopedic surgery. He opined that based on plaintiffs history, it is more probable than not that her herniated disc was caused by the March 2006 accident. On cross-examination, Dr. Johnson admitted that plaintiff never informed him of the June 2010 or October 2010 accidents. However, he opined that these accidents did not worsen her back condition because there was “no change in the size of the disc displacement.”
At the conclusion of the trial, the trial judge denied plaintiffs claims, stating “I don’t feel that I’ve been shown enough by the Plaintiffs [sic] to warrant an award.” On July 1, 2011, the trial judge signed a judgment in favor of Allstate, dismissing plaintiffs suit with prejudice at her costs. This timely appeal followed.

\ ASSIGNMENT OF ERROR

On appeal, plaintiff argues that it was error for the trial court to have not found causation when all of the evidence directly connects plaintiffs condition to the accident in question, and accordingly, to not have awarded plaintiff damages. Plaintiff contends that there is no evidence in the record to contradict plaintiffs testimony, the medical records, and the testimony of Dr. Johnson, who directly related plaintiffs herniated disc to the March 12, 2006 accident. Defendant responds that the trial judge’s ruling was premised upon his opinion that plaintiff lacked the requisite credibility to convince him that plaintiff sustained damages exceeding $25,000 as a result of the March 12, 2006 accident.

LAW AND ANALYSIS

The applicable standard of appellate review of a factual finding is the manifestly erroneous or clearly wrong standard. Under this standard, in order to reverse a factfinder’s determination, an appellate court must conduct a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine the record establishes the finding is clearly wrong. S.J. v. Lafayette Parish Sch. Bd., 09-2195 (La.7/6/10), 41 So.3d 1119, 1127-28; Stobart v. State, Dep’t of Transp. and Development, 617 So.2d 880, 882 (La.1993). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was reasonable. Id. If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id. Accordingly, where there are | stwo permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous. Id. When applying the manifestly erroneous/clearly wrong standard to the findings of the trial court, appellate courts must continually keep in mind that their initial review function is not to decide factual issues de novo. Rosell v. ESCO, 549 So.2d 840, 844. Credibility determinations of the trier of fact are subject to the utmost deference under the manifest error-clearly wrong standard. Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305. Consequently, if the trial court’s decision is reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though the *221 appellate court would have weighed the evidence differently. Rosell, supra.
The record before us indicates that plaintiff experienced back pain following the rear-end collision that occurred on March 12, 2006. She sought treatment from Dr. Haydel shortly after the accident and continued regular treatment with Dr. Haydel for approximately two months. She then traveled out of the country for elective surgery. After returning to the United States, she sought treatment in a local emergency room on June 22, 2006 for anemia caused by the surgery. Although she mentioned back pain, she was not treated for back pain during this visit. The testimony indicates that plaintiff had an epidural during these elective surgical procedures and incisions were made into her sacral area. The testimony and medical records also indicate that plaintiff was involved in at least one physical altercation with her boyfriend during the summer of 2006. Although plaintiff claims she was not injured in this altercation, the police were called and plaintiffs boyfriend was apparently put in jail. Plaintiff also sought psychiatric treatment during this time.
In July 2006, plaintiff sought treatment from another chiropractor and received treatment from that chiropractor for approximately two and a half months. |aThe records indicate that plaintiff was referred to a pain specialist for management of her back pain. There is no indication in the appellate record, however, that plaintiff followed up on this referral. The record also indicates that plaintiffs mother, with whom she lived, gave plaintiff a membership to a health club during this time, apparently to assist her in losing weight.
Plaintiff became pregnant and delivered twins in 2007. She sought treatment for back pain during her pregnancy and was again treated by Dr. McCue on a regular basis for approximately six weeks. At trial, Dr. Johnson testified that pregnancy can lead to low back pain. Plaintiff did not return to the doctor for treatment of back pain until March of 2008. Shortly thereafter, an MRI revealed a herniated disc. However, between the time of the accident and the time of this MRI, the record indicates that plaintiff underwent elective surgery which involved an epidural and incisions into her sacral area, was involved in at least one physical altercation, and delivered twins.
Further, after being diagnosed as having a herniated disc, plaintiff sought no medical treatment for her back until an isolated emergency room visit of July 2009. She did not seek treatment for back pain again until October 4, 2010, when she presented to Dr. Johnson. However, she had been involved in another motor vehicle accident in June 2010 and did not report this subsequent accident to Dr. Johnson. A follow up MRI performed on October 19, 2010 indicated that plaintiffs herniated disc was now causing nerve root compression; however, plaintiff was involved in a third motor vehicle accident on October 8, 2010. Plaintiff admitted that her symptoms increased after this accident.
Based on our careful review of the entire appellate record, including all of the medical records, we find that the trial judge did not err in ruling in favor of Allstate. The evidence presented at trial shows that plaintiff was treated for | mcomplaints of back pain for approximately three months after the March 12, 2006 accident, was involved in a physical altercation in 2006, was diagnosed with a herniated disc in April 2008, was involved in two motor vehicle accidents in 2010, and a subsequent MRI showed a herniated disc with nerve root compression. Although Dr. Johnson related the MRI findings to the accident of March 12, 2006, he was not *222 given the history of the elective surgery, the altercation with plaintiffs boyfriend, or the two accidents in 2010. In fact, on cross-examination, Dr. Johnson agreed that his opinion “is as good as the information” he gets from the patient “when he is trying to causally relate something.” After considering all of the evidence presented in the record before us, we find that the trial court’s judgment was reasonable.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED

. Plaintiff denied ever going to the health club.